# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | |
|---|---|
| **LACRECIA MILLICAN**, on behalf of herself and all others similarly situated, | : |
| | : |
| Plaintiff, | : Case No: |
| | : |
| v. | : Hon. |
| | : |
| **CHEWY, INC.**, a Delaware corporation, | : Mag. |
| | : |
| Defendant. | : |
| | : |

## COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff, LaCrecia Millican ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, Chewy, Inc. ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and common law.

2.      Defendant is an online retailer of branded and private-label pet food, grooming supplies and other pet-related products. According to its website, Defendant is "on a mission to be the most trusted and convenient destination for pet parents (and partners) everywhere" and "strive[s] to deliver the best products with the best service."[1] Defendant claims that "[h]appy

---

[1] https://careers.chewy.com/us/en (last visited June 20, 2023); *see also* https://www.chewy.com/app/content/about-us (last visited June 20, 2023).

customers" are the company's "#1 priority." [2]

3.      In selling the aforementioned items, Defendant employed customer service representatives in brick-and-mortar call centers in Hollywood, Florida, Richardson, Texas and Dallas, Texas and remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Customer Service Agent, to refer to its customer service representatives (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to answer questions 24/7 and help Chewy customers find the perfect items for their pets.[3]

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone inbound customer service.

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[4]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day

---

[2] https://www.chewy.com/app/content/about-us (last visited June 20, 2023).
[3] *See* https://www.chewy.com/app/content/about-us; *see also*
https://www.linkedin.com/jobs/view/customer-service-representative-remote-in-phoenix-az-at-chewy-3634696648/?utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (last visited June 20, 2023).
[4] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA),
https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited June 20, 2023).

for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

9.      Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, and in non-overtime workweeks, for regular hours.

10.     More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

11.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.     At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in the state of Massachusetts and employs individuals within the state of Massachusetts.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs hourly employees in this district and conducts business in this district.

## PARTIES

19.      Plaintiff LaCrecia Millican is a resident of Kemp, Texas and worked for Defendant as an hourly, non-exempt CSR in its Richardson, Texas brick-and-mortar location from approximately November 16, 2021 through December 2021, and remotely from approximately January 2022 through July 2022. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $15.50 per hour. Plaintiff Millican signed a consent to join this collective

action, which is attached as **Exhibit A**.

20.     Defendant Chewy, Inc. is a Delaware corporation (File No. 5415002), registered in the state of Massachusetts (Identification No. 001259415), with headquarters in Boston, Massachusetts and Plantation, Florida. [5] Within the state of Massachusetts, Defendant has a registered agent for service of process listed as Corporate Creations Network, Inc., 225 Cedar Hill Street, #200, Marlborough, Massachusetts 01752.

## GENERAL ALLEGATIONS

21.     Defendant paid its CSRs at varying hourly rates.

22.     Defendant's CSRs typically worked five days each week and up to forty (40) or more hours per week.

23.     Prior to being hired, CSRs received an offer from Defendant that set forth the requirements of a CSR, the job duties, and the offered rate of pay.

24.     Plaintiff received such an offer from Defendant to serve as a CSR, and she accepted Defendant's offer with the understanding that her base wage rate, most recently $15.50 per hour, would be paid as promised.

25.     Plaintiff performed under the contract by carrying out her job duties and responsibilities. More specifically, Plaintiff answered inquiries from and resolved problems for Chewy customers by problem-solving and thinking proactively. The aforementioned customer service was provided via inbound calls and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

26.     Once hired, Defendant provided all CSRs, like Plaintiff, with, *inter alia*, training

---

[5] *See* https://careers.chewy.com/us/en/locations ("We are dually headquartered in historic Boston, MA, and sunny Plantation, FL…") (last visited July 7, 2023).

on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training Defendant's CSRs received was substantially, if not entirely, the same and all CSRs were subject to the same and/or substantially similar policies and quality assurance reviews.

27.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

28.      In order to perform their job duties, Plaintiff and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

29.     Plaintiff and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started, yet Defendant prohibited them from clocking in before the start of their shift. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began.

30.     Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready" status. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, CSRs. This discipline included, but was not limited to, team coaching via Zoom, corrective actions, write-ups and termination.

31.     All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs

and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

32.    Defendant's CSRs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods conclude.

33.    Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/log out of the programs and applications that they utilized during their shifts.

34.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-, mid- and post-shift work off-the-clock.

35.    The pre-, mid- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

36.    As a result of the pre-, mid- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately seven (7) minutes of compensation every day.

37.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with their CSRs.

38.    Further, Defendant was aware that by relying exclusively on a web-based timekeeping system, some off-the-clock work was bound to occur every day.

39.    Indeed, in light of the explicit DOL guidance cited above, there is no conceivable

way for Defendant to establish that it acted in good faith.

40.    Despite knowing Plaintiff and all other CSRs performed this pre-, mid- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

41.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

42.    Because Defendant required its CSRs, including Plaintiff, to perform pre-, mid- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A.  Pre-Shift Off-the-Clock Work**

43.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including logging into multiple computer networks, software programs and applications. Defendant's CSRs only received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

44.    The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (5) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

a.  Turn on their computer;

b.  Log into Microsoft Windows using their username and password;

c. Secure access to Defendant's server (the virtual private network or "VPN") using a dual authentication process through which the CSR would have to click "allow" or "do not allow" on their cell phone;

d. Open Zoom – the application CSRs used for daily huddles;

e. Open Workday – the application CSRs used to access and update personal company information;

f. Open Slack – the application CSRs used for internal messaging;

g. Open and log into Cisco – the application CSRs used for handling calls;

h. Open and visit Chewy's homepage containing the Kronos timekeeping platform;

i. Log into Kronos using a username and password; and

j. Clock in and go into a "ready" status in the phone system.

45.    Defendant's CSRs must complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs must arrive to work approximately five (5) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

46.    Defendant's CSRs were not compensated for all of this time because Defendant prohibited CSRs from clocking into its timekeeping software before the start of their scheduled shift.

47.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

**B.  Meal-Period Off-the Clock Work**

48.    Defendant promised its CSRs one unpaid 30-minute meal period each eight (8) hour shift (the bare minimum required by federal law).

49.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for

the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

50.     Instead of complying with the law, Defendant did not provide CSRs with legitimate bona fide meal periods because it required the CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

51.     If CSRs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they were considered "out of adherence" and could be subjected to disciplinary action.

52.     CSRs spent approximately one (1) to two (2) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which it failed to pay CSRs for no less than one (1) to two (2) minutes per day of work performed during their meal period.

53.     The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

54.     Defendant's management was aware that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through Defendant's schedule adherence

metrics.

### C. Post-Shift Off-the Clock Work

55.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were permitted to stop fielding calls no more than five (5) minutes before the end of their scheduled shift if they were not on a call. In those instances, the CSRs were required to clock-out no earlier than the end of their scheduled shift.

56.     On the routine occasions when Plaintiff and other CSRs were fielding a call up to and/or past the end of their scheduled shift, Defendant trained and instructed its CSRs, including Plaintiff, to clock out as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems to make certain they were clocked-out the moment they stop fielding customer queries.

57.     After they clocked out for the day, CSRs, including Plaintiff, were forced to shut-down/log-out of the various computer programs and software applications they utilized in performing their job duties. This resulted Plaintiff and other CSRs performing an additional minute of off-the-clock work every day.

58.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

### D. The Off-the-Clock Work Results in Viable "Gap Time" Claims

59.     Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*,

22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA).

60.    Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

61.    During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

**E.  Plaintiff's Exemplary Workweek**

62.    Defendant paid CSRs on a weekly basis. As an example of one pay period where Defendant failed to pay Plaintiff overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystubs for the pay period of October 31, 2021 – November 6, 2021:

- Plaintiff worked more than 40 hours in a week at a rate of $15.00 per hour and upon information and belief was paid $22.50 per hour in overtime.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional 7 minutes or more at her overtime rate of $22.50 for each hour worked in excess of 40 in the overtime week.

**Exhibit B**, Millican Exemplary Pay Statement.

## COLLECTIVE ACTION ALLEGATIONS

63.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this

definition if necessary.

64.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

65.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

66.     Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

67.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

68.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

69.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.  Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

      b.  Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

70.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

71.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

72.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are 1) required to work without compensation; and 2) entitled to overtime for hours worked over forty (40) in a week.

73.    Plaintiff estimates the FLSA Collective, including both current and former hourly employees over the relevant period, includes hundreds, if not thousands, of current and former hourly employees. The precise number should be readily available from a review of Defendant's personnel and payroll records.

74.    The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

75.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf

of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant*
> *at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend

this definition if necessary.

76.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all

Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably

estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class

members should be easy to identify from Defendant's computer systems and electronic payroll

and personnel records.

77.    There is a well-defined community of interests among Rule 23 Nationwide Class

members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 Nationwide Class. These common legal and factual

questions, include, but are not limited to, the following:

     a.    Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent
        on startup and login activities each shift is compensable time under applicable
        law;

     b.    Whether the post-shift time Rule 23 Nationwide Class members spent closing
        all programs, applications and networks is compensable time under applicable
        law;

     c.    Whether Defendant's non-payment of wages for all compensable time
        amounted to a breach of contract; and

     d.    Whether Defendant's non-payment of wages for all compensable time resulted
        in an unjust enrichment to Defendant.

78.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she

and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result

of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise

from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

79.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

80.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

81.    This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

82.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

83.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

84.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

85.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

86.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

87.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

88.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

89.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

90.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

91.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

92.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of

individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

93.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed.

94.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was not *de minimis*.

95.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

96.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

97.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

98.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

99.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

100.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

101.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

102.    For example, Defendant offered to compensate Plaintiff at a minimum of $15.50 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

103.    Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

104.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $15.50 per hour within the applicable period.

105.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the

contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

106.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

107.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

108.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

109.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

110.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

111.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

112.   This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

113.   At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

114.   Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

115.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

116.   Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

117.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

118.   Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its business ventures or pay its equity owners.

119.   Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

120.   Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's

failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

121.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.    An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.    An Order declaring Defendant's violations of the FLSA were willful;

h.    An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.     An Order awarding such other and further relief as this Court deems appropriate.

Dated: July 14, 2023                    Respectfully Submitted,

Benjamin Knox Steffans
Steffans Legal PLLC
10 Wendell Ave. Ext. Suite 208
Pittsfield, Massachusetts 01201
Phone: (413) 418-4176
bsteffans@steffanslegal.com

Kevin J. Stoops (*pro hac vice* forthcoming)
Alana Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

## JURY DEMAND

Plaintiff, LaCrecia Millican, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.